UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RHONDA F.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:21cv254 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

       through December 31, 2023.

2.    The claimant has not engaged in substantial gainful activity since May 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: Degenerative Disc Disease of the Lumbar Spine, Diabetes Mellitus, Asthma, Morbid Obesity, Migraine Headaches, Major Depressive Disorder, and Post-Traumatic Stress Disorder (PTSD) (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift/carry and/or push/pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours of an eight-hour workday. The claimant can stand/walk for 2 hours of an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, and can have no concentrated exposure to moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, and extreme heat. The claimant is able to perform simple, routine tasks. The claimant is able to interact with supervisors, coworkers, and the public occasionally with brief and superficial contact, defined as no lower than an 8 in terms of the 5th digit of the DOT Code.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 25, 1983 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual

> functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 22-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on November 22, 2021. On December 22, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on January 25, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 5 was the determinative inquiry.

Plaintiff has a history of mental health issues pre-dating her onset date. (Tr. 324-25, 334, 340, 354, 2006). A prior consultative examination in 2016 by Dr. Nancy Fink found Plaintiff had severe major depressive disorder and a global assessment functioning ("GAF") score of 45. (Tr. 340-54). Pre-dating her onset, Plaintiff also has a history of lower back and sacroiliac ("SI") pain for which she received injections. (Tr. 2090).

Plaintiff's onset date centers around the loss of her unborn child overlapping with issues related to hyperglycemia. (Tr. 618, 854, 949, 953, 1001, 1069). Additionally, Plaintiff suffered from edema to the hands and feet (Tr. 851), poorly controlled diabetes, morbid obesity, chronic migraines and neuropathy. (Tr. 855). Plaintiff was also treated for lower back pain, was scheduled for a SI injection, and medicated with Norco and Gabapentin. Antalgic gait was observed. (Tr. 2082, 2085).

Mentally, Plaintiff was grieving the loss of her son, trying to avoid being homeless and working part-time. She had been taking antidepressants, Viibryd and Trazodone, which were not working and she felt tired all the time. (Tr. 1611, 1614-15). She was told to start Wellbutrin and Klonopin. She was sleeping only three hours per night. (Tr. 2241-42). Plaintiff was started on Prozac for severe depression. (Tr. 4013 Mental health records reflect that she was sad, depressed, her speech was slow and she had a disheveled appearance. (Tr. 2178-81). Panic attacks were noted. Plaintiff's Prozac was increased and she had a PHQ-9 score of 18. (Tr. 2231). Wellbutrin was also increased due to a lack of motivation. (Tr. 2235).

In 2019, Plaintiff felt fatigued and depressed. She was crying at her mental health appointment and Prazosin was prescribed. (Tr. 2221-22). Also, Levocetirizine was restarted. (Tr.

5

2214-16). She was sleeping four hours per night. Her medicines were changed to Pristiq, Lunesta and Xanax. (Tr. 2204-07). Panic attacks were occurring twice per week. (Tr. 2201). On examination, she was tearful, anxious and withdrawn. (Tr. 2153). Therapy was recommended three times per week. (Tr. 2154-60). Epworth Hospital, a psychiatric hospital, was recommended for inpatient care, but Plaintiff declined to be admitted. (Tr. 3406). Plaintiff complained of decreased energy and she was sleeping poorly.

On examination Plaintiff was tearful, depressed, sad and had limited judgment. Cymbalta was started. (Tr. 2914). She reported staying in bed over the weekends and suffering 2-3 panic attacks per day. (Tr. 3875). An antipsychotic, Rexulti, was increased and Buspar was added for anxiety. (Tr. 3876). Plaintiff continued to complain of fatigue, which was possibly related to her uncontrolled depression. (Tr. 3898). Her PHQ-9 score continued to be at 18. She had a bad mood and flat affect. Valium was started as well as Depakote, and Buspar was increased. (Tr. 2477-78). She was suffering from nightmares. (Tr. 2599). She was using Botox for migraines. (Tr. 2643). Plaintiff reported a high level of anxiety and she was scratching herself. Alprazolam was not working but could not be increased. (Tr. 3199, 3201). She complained of feeling very fatigued and having increased headaches. (Tr. 4169). Nurse Practitioner Beth Hayden completed a source statement supporting disability and noting severe depression and panic attacks which were disabling. (Tr. 4210). Dr. Ann Monis opined that Plaintiff had mild mental restrictions(Tr. 4219-24).

An MRI showed multilevel degenerative disc disease most significant at L2-3. (Tr. 1630). Plaintiff was continued on Norco and Gabapentin for her lower back pain. Her gait was antalgic. (Tr. 2074-77). She suffered from bilateral lower extremity edema. (Tr. 4001). A pulmonary

function test showed moderately decreased maximum ventilatory volume. (Tr. 2370). Plaintiff treated for headaches and was referred to a neurologist. (Tr. 2120). Diabetic neuropathy was noted and she was started on Lasix for fluid retention. (Tr. 2196-98).

Plaintiff's diabetes was out of control and bariatric surgery was discussed. (Tr. 3359). She was treated for bilateral edema and daytime somnolence. (Tr. 2527, 2486). Plaintiff's blood sugar numbers were increasing. (Tr. 2689, 2756). Plaintiff treated for an acute exacerbation of chronic obstructive pulmonary disease ("COPD") and diabetic neuropathy. (Tr. 2668, 2996, 3134). She was reporting a lot of back and leg pain with note of edema and neuropathy. (Tr. 3160-61). Plaintiff treated at the emergency room for worsening lower back pain and was given Flexeril. (Tr. 3214). She also treated at the emergency room for hyperglycemia. (Tr. 3223).

In support of remand, Plaintiff first argues that the ALJ erred in evaluating her mental impairments. The Seventh Circuit has consistently held that the ALJ's RFC assessment, and the hypothetical question posed to the vocational expert (VE), "must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). *See also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004). "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813-14 (7th Cir. 2015) (citations omitted). The Seventh Circuit has made clear that, though magic words need not be incanted, "the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citation and internal quotations omitted). Upon finding

7

that Plaintiff had moderate limitations with concentration, persistence, and pace, it was incumbent upon the ALJ to undertake an individualized assessment of Plaintiff's specific symptoms, which Plaintiff argues he failed to do. *See Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) ("*Crump* teaches that a restriction to simple tasks is 'generally' not enough to account for moderate CPP limitations.... The concern is that the restriction is used as a one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms.")(citations omitted).

Plaintiff argues that the restriction to "simple, routine" tasks, does not encompass all of her mental limitations. (Tr. 26). Generally, "employing terms like 'simple, repetitive tasks' on their own" in a hypothetical question to a VE does not suffice to account for limitations of concentration, persistence and pace because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. Similarly, posing to the VE a hypothetical limiting the claimant to "unskilled work" with no "fast-paced production line or tandem tasks" does not suffice to account for a moderate limitation on concentration, persistence, and pace. *DeCamp*, 916 F.3d at 675-76 ("We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.").

As set forth above, Plaintiff has had extensive mental health issues and treatment. The evidence above reflects that Plaintiff suffers from panic attacks, increased anxiety, problems with sleep/insomnia and fatigue. Plaintiff notes that the evidence reflects the likelihood that she would

8

need additional breaks during the day to manage her pain and fatigue, and extra time to complete work tasks due to slow movements, fatigue, and psychological symptoms. Considering this evidence, the ALJ was obligated to provide some explanation as to how simply reducing Plaintiff to unskilled work accommodated such evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Kevin L. v. Kijakazi*, 2:20CV311, 2021 WL 5231737, at *12 (N.D. Ind. Nov. 10, 2021).

In response, the Commissioner argues that the evidence does not support Plaintiff's need for breaks or off task behavior and states that "an ALJ is not required to address every piece of evidence". However, the evidence discussed above reflects that Plaintiff would likely require additional breaks during the workday to manage symptoms, as well as additional time to complete tasks. If she struggled to concentrate, suffered from panic attacks and high levels of anxiety and was fatigued, she likely would be unable to complete work tasks efficiently, even in a work environment with simple and routine tasks.

Clearly, the ALJ should have explained how the mental limitations in the RFC would be sufficient, given the above evidence. *See Clifford*, 227 F.3d at 872 (ALJs "must build an accurate and logical bridge" from the evidence to their conclusions). Thus, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in failing to resolve a conflict at Step 5. Where, as here, a claimant cannot perform her previous work, "the Social Security Administration bears the burden of showing that a significant number of other jobs are available to the claimant." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). *See also Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). Here, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31). *See* 20 C.F.R. §

9

404.1520(a)(4)(v). The ALJ based his finding on the testimony of the VE, who identified the following occupations: cutter/paster (DOT No. 249.587-014, 11,657 jobs in the national economy); assembler (DOT No. 739.684-094, 9,611 jobs in the national economy); and, microfilming document preparer (DOT No. 249.587-018, 29,298 jobs in the national economy) (Tr. 31, 90). The DOT classifies a cutter/paster and an assembler at reasoning level 2 and classifies a microfilming document preparer at reasoning level 3.[2] 1991 WL 672348; 1991 WL 680137; 1991 WL 672349. Plaintiff asserts that there was an apparent conflict between the VE's testimony and the DOT because the RFC included a limitation to simple, routine tasks and reasoning level 3 requires that a worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations". 1991 WL 672349; *see also* SSR 00-4p, 65 Fed. Reg. 75,759 (Dec. 4, 2000).

At the hearing, the ALJ asked the VE if her testimony was consistent with the DOT. (Tr. 90). *See* SSR 00-4p ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency [between the vocational expert's testimony and the Dictionary of Occupational Titles]."). The VE answered, "Yes" (Tr. 90). Plaintiff's counsel did not challenge the VE's testimony on the point she now raises. "[A]n ALJ is entitled to rely on unchallenged VE testimony." *Zblewski v. Astrue*, 302 F.App'x 488, 494 (7th Cir. 2008); *see also Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir.

---

[2] Appendix C of the Dictionary of Occupational Titles explains the General Educational Development (GED) Scale. 1991 WL 688702. The GED Scale refers to "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance": Reasoning Development, Mathematical Development, and Language Development. 1991 WL 688702.

10

2002) ("On the record as it stands—that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did."). Thus, Plaintiff must now demonstrate "that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve apparent conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *see also Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020).

Plaintiff relies on the Vocational Expert Handbook, which instructs that an apparent conflict exists when the occupation requires reasoning level 3 and the hypothetical includes a limitation to "'simple' or 'repetitive' tasks". Vocational Expert Handbook, https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf. "As an initial matter, while it is true that the referenced handbook suggests a conflict exists with respect to level 3 reasoning and simple tasks, such internal guidance does not have the force of law." *Tommie S. v. Kijakazi,* No. 19-C-8249, 2021 WL 5232728, at *5 (N.D. Ill. Nov. 10, 2021). And contrary to Plaintiff's argument, the Supreme Court's reference to the Vocational Expert Handbook in *Biestek* does not invalidate the district court's analysis in *Tommie S*. *Biestek*, 139 S. Ct. at 1155. "[T]he handbook is not binding and cannot serve as a basis to undermine the ALJ's decision." *Weirauch v. Comm'r of Soc. Sec.*, No. 20-11511, 2021 WL 4497865, at *19 (E.D. Mich. Mar. 23, 2021); *see also Medeiros v. Saul*, No. 19-11079, 2020 WL 4583871, at *10 (D. Mass. Aug. 10, 2020) ("[T]he VE handbook is not a source of law that binds this court, [and] does not bestow upon claimants any judicially enforceable rights."). "Moreover, courts have found that there is no conflict." *Tommie S*., 2021 WL 5232728, at *5; *see also Surprise*, 968 F.3d at 663 ("In fact, we

11

have gone as far as to say that there is no apparent conflict between a simple tasks limitation[] and level 3 reasoning—a more demanding standard than level 2."). The Seventh Circuit found no conflict in *Sawyer v. Colvin*, 512 F.App'x 603, 610-611 (7th Cir. 2013). Like Plaintiff herein, the plaintiff in *Sawyer* was assessed with a moderate limitation in concentrating, persisting, or maintaining pace, with a limitation to simple tasks. *Id*. And like the VE in Plaintiff's case, the VE in *Sawyer* testified that the plaintiff "could perform jobs that have a reasoning-development level of 3." *Id*. at 610.

Plaintiff oversimplifies the semantic differences between the language in an RFC assessment and the language in the DOT's GED Scale. Significantly,"[t]he DOT and Social Security regulations [] use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties." *Eggleston v. Colvin*, No. 13-C-5208, 2015 WL 2208221, at *5 (N.D. Ill. May 7, 2015). "The regulations divide such abilities into only two categories—'short and simple instructions' and 'detailed' or 'complex' ones—whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy." *Thompkins v. Astrue*, No. 09-C-1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010).

Moreover, "the dictionary's General Educational Development levels focus on the worker's educational background, not on on-the-job requirements." *Givens v. Colvin*, 551 F.App'x 855, 863 (7th Cir. 2013). The distinction matters for purposes of challenging the occupations identified at Step 5. For example, as the Seventh Circuit explained in *Givens*, language level 3 requires that a worker "[r]ead a variety of novels, magazines, atlases, and encyclopedias;" but those reading abilities were only indicative of the plaintiff's educational

12

background and were not part of the specific occupational descriptions at issue. *Id*. ("Nowhere in the job descriptions for either position is a tester or monitor required to read novels or magazines.").

In light of the above, this Court finds there was no conflict at Step 5, and thus remand is not appropriate on this issue.

Plaintiff next argues that the Commissioner identified an insignificant number of jobs in the national economy. Here, the Commissioner has identified 50,566 jobs at Step 5. In *Primm v. Saul*, 789 F.App'x 539, 546 (7th Cir. 2019), the Seventh Circuit held that 110,000 jobs available nationally was a significant number. Also, the Seventh Circuit has concluded that 140,000 jobs available nationally was "well above the threshold for significance." *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (emphasis added). More recent analysis by the Seventh Circuit has identified 30,000 jobs to be "enough jobs." *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021). In recent cases, this Court has also concluded that job numbers below 100,000 constituted a significant number of jobs in the national economy. *See Zych v. Kijakazi*, No. 1:20-CV-00414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021) ("Given the foregoing persuasive authority, and the lack of clarity in this circuit as to what constitutes a significant number of jobs, I conclude that 41,000 jobs in the national economy is a 'significant number' of jobs for purposes of the ALJ's step-five determination in this case."); *Dugan v. Kijakazi*, No. 1:20-CV-00344-SLC, 2021 WL 5231731, at *4 (N.D. Ind. Nov. 9, 2021) ("Therefore . . . I conclude that 99,000 jobs is a 'significant number' of jobs for purposes of the ALJ's step-five determination in this case."). The total number of jobs in Plaintiff's case – 50,566

13

jobs in the national economy – fits within this group of significant numbers.[3] Thus, remand is not warranted on this issue.

Next, Plaintiff argues that the ALJ erred in evaluating her subjective symptoms. An ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and the factors of 20 C.F.R. § 404.1529(c)(3). Here, Plaintiff argues that the ALJ made several errors in assessing her subjective symptoms, which in turn allegedly caused errors in the RFC assessment.

In evaluating a claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); 20 CFR § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The ALJ cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical

---

[3] Other circuits have held that fewer jobs than the 50,566 identified here would constitute a significant number. *See Sanchez v. Comm'r of Soc. Sec.*, 705 F.App'x 95, 99 (3d Cir. 2017) ("The vocational expert testified that 18,000 . . . jobs exist[ed] in the national economy, and precedent suggests that this is sufficiently 'significant' to support the ALJ's decision."); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that 6,000 jobs available nationally "fits comfortably within what this court and others have deemed 'significant.'"); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-529 (9th Cir. 2014) (upholding 25,000 national jobs as "a significant number of jobs in several regions of the country"); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (stating that "the vocational expert's testimony was sufficient to show that there exist[ed] a significant number of jobs," with 200 jobs in Iowa and 10,000 jobs in the national economy).

testimony."). Even if a claimant's subjective symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support the claimant's subjective symptoms. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

SSR 16-3p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." SSR 16-3p, at *4; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). The Seventh Circuit has stated "... we cannot uphold an administrative decision that fails to mention highly pertinent evidence ... or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome.." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)(citations omitted).

Here, the ALJ found that Plaintiff's statements concerning the severity of her symptoms were not consistent with the medical evidence. (Tr. 28). The ALJ noted that Botox injections had relieved Plaintiff's migraines by more than 50% following treatment. (Tr. 27). Plaintiff contends that the record cited only notes that Plaintiff had a "remarkable reduction" in the frequency of migraines. (Tr. 27). Plaintiff points out that she still experiences migraines which usually last for a day or day and a half. (Tr. 75). Plaintiff further explained "I'm basically worthless at this point in time, whenever a migraine comes on". (Tr. 75). Plaintiff argues that the ALJ pointed to no medical evidence that contradicted Plaintiff's testimony and notes that she continued to obtain Botox treatment throughout the relevant period. (Tr. 2619, 2624, 2629). Plaintiff contends that

15

Botox is only prescribed for migraines happening more than 15 days per month. Plaintiff concludes that the ALJ's evaluation of her migraine symptoms lacks explanation and support in the record. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Plaintiff further argues that the ALJ does not mention her fatigue/insomnia and lack of energy despite its numerous references in this record. (Tr. 2134, 2193, 2198, 2200, 2205, 2486, 2603, 3409, 3898, 4169).

As to lumbar spine issues, the ALJ acknowledged that, despite lumbar surgery, Plaintiff's pain persisted. However, the ALJ failed to explain how he supported a finding of sedentary work or why he rejected all of Plaintiff's statements as to pain. (Tr. 27). Plaintiff further points out that she suffered from diabetic neuropathy and edema in her lower extremities, which supports her assertions of pain when she is on her feet. (Tr. 27-28, 851, 855, 1719, 2527, 2546, 2577, 2600, 3085, 3108, 3161, 4001).

The Commissioner has submitted a very weak response to Plaintiff's arguments regarding the ALJ's evaluation of her symptoms, relying on general statements such as "the ALJ need not discuss every piece of evidence" and the ALJ's evaluation of Plaintiff's symptoms "need not be perfect" was not "patently wrong." However, as this case is being remanded for a more thorough evaluation of Plaintiff's mental impairments, the Court will also remand for a more detailed evaluation of Plaintiff's symptoms.

Plaintiff also argues that the ALJ failed to properly evaluate the medical opinions. The ALJ found that the State agency consultants' opinions were persuasive and consistent with the record. (Tr. 29). Plaintiff contends the State agency consultants did not review evidence regarding Plaintiff's neuropathy and edema issues. The record shows, however, that the State agency consultants cited medical evidence that documented both the presence and absence of Plaiintiff's

16

neuropathy and edema. (Tr. 100, 105-06, 118-19, 124). Likewise the Agency consultants considered Plaintiff's migraines and Botox treatments. (Tr. 111-128).

Plaintiff also argues that the ALJ improperly evaluated the opinion of NP Beth Hayden. Hayden opined that Plaintiff would be unable to: follow work rules; relate to coworkers; deal with the public; use judgment; interact with supervisors; deal with work-related stress; function independently; maintain attention/concentration; understand, remember, and carry out job instructions; behave in an emotionally stable manner; relate predictably in a social manner; demonstrate reliability; make simple work-related decisions; respond appropriately to usual work situations; deal with changes in a routine work setting; and, respond appropriately to supervisors and coworkers. (Tr. 4210-4211). She would be off task 25% or more of the time. (Tr. 4210-4211). She would be absent four or more days a month. (Tr. 4210-4211). Plaintiff would be unable to sustain work on a continuing basis. (Tr. 4210-4211).

The ALJ found this extreme opinion to be unpersuasive, noting that it was inconsistent with treatment notes. (Tr. 29-30). As the ALJ explained, although the medical record documented "sad affect and depression with some anger," Plaintiff's mental status was generally observed to be intact. (Tr. 29-30, 2076, 2080, 2125, 2653). Moreover, psychologist, Ann Monis, opined that NP Hayden's opinion "does not reflect evidence in totality of records submitted (it is not commensurate with records submitted) and the limitations are not well substantiated". (Tr. 4230-4231). The ALJ found Dr. Monis' "opinion regarding Ms. Hayden's evaluation" persuasive (Tr. 30). This Court finds no error in the ALJ's evaluation of the medical opinions. Thus, remand is not warranted on this issue.

However, as discussed above, remand is appropriate on the issues of Plaintiff's mental

limitations and the proper evaluation of Plaintiff's subjective symptoms.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: February 1, 2022.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court